UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERIKA YATES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-123 |
| | § | |
| CITY OF KEMAH, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Before the Court is the defendant, the City of Kemah, Texas' ("City"), motion for summary judgment (Inst. No. 36), and the plaintiffs', Erika Yates, Greg Nolan and Rick McCollum, response (Inst. No. 38) and the City's reply (Inst. No. 41). After a careful review of the facts developed and the law applicable to those facts, the Court determines and concludes that the City's motion is meritorious and should be granted.

**II.   FACTUAL BACKGROUND**

The plaintiffs, Yates, Nolan and McCollum, are former police officers employed by the City in the respective capacities of police officer, Sergeant and Lieutenant. They were also members of the Kemah Police Officers Association where Nolan served as President and Yates served as Secretary/Treasurer at the time of their lay-offs from the police department in April of 2009. The plaintiffs assert that as members and leaders in the Association, they were "vocal and politically active." They formed a Political Action Committee ("PAC") and utilized the PAC to host a "meet the candidate" night in May of 2009, where candidates seeking elected offices in the City could express their views, and police officers might express their concerns about the department.

During the "meet the candidates" night in April of 2009, concerns were raised that the City's response to the officers needs in the wake of Hurricane Ike in 2008 were inadequate. One of the candidates who attended the April meeting was, according to the plaintiffs, "a political ally of [the Mayor]." Allegedly the candidate was "embarrassed" by the press of one or more questions and remarked that the City needed to get "rid of some 'dead wood around here.'" Within two weeks of the meeting, the plaintiffs were laid off from their employment with the City.

## III.   THE PARTIES CONTENTIONS

### A.   *The Plaintiff's Contentions*

The plaintiffs contend that they were terminated because of their union membership and the political activities that they engaged in on behalf of the Association. They also attribute their termination more specifically to the fact that they did not support the candidacy of Matthew Wiggins for mayor. Therefore, their terminations were in one sense "pay-back." As claims for relief, the plaintiffs seek redress under 42 U.S.C. § 1983 for deprivation of their rights to freedom of speech and association, protected under the First Amendment to the United States Constitution. As well, the plaintiffs assert that their rights under state law and the "due process" clause of the Fourteenth Amendment to the federal Constitution were violated in that they were "deprived of a cognizable property interest in their employment." *See* [Chapter 614.021-023, Texas Government Code]. The plaintiffs assert that they were terminated without any written complaint or investigation, as required by state statute. *Id.*

### B. *The City's Contentions*

The City disputes the plaintiffs' claims in all respects. It asserts that the plaintiffs were not "subjected to any adverse employment action attributable to protected speech or association." In fact, the City claims that the plaintiffs were the subject of a lay-off due to budgetary cuts that were made necessary by Hurricane Ike. The City further asserts that the plaintiffs were not deprived of "due process" by the manner of their lay-offs. Moreover, the City asserts, the plaintiffs do not enjoy a property interest in their employment; they are "at will" employees. Hence, the City contends, no state statute creates a property right on behalf of the plaintiffs in their employment. Therefore, the City argues, the plaintiffs' claims are without merit and it is entitled to a summary judgment.

## IV. STANDARDS OF REVIEW

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### B. *First Amendment Standard*

In order to prevail on a First Amendment claim, a plaintiff must establish that: (a) he suffered an advanced employment decision; (b) his speech involved a matter of public concern; (c) his interest in commenting outweighs the defendant's interest in promoting efficiency; and (d) his speech was the motivating factor in the defendant's decision to terminate him. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *see also Connick v. Myers*, 461 U.S. 138, 142 (1983). The same analytical framework applies to a claim of violation of the right to freedom of association. *See Breaux*, 205 F.3d at 157 n. 12.

### C. *Fourteenth Amendment Due Process Standard*

The fundamental right guaranteed by the "due process" clause of the Fourteenth Amendment is the right to notice and an opportunity to be heard. *See Cleveland Bd. Of Educ. V.*

*Loudermill*, 470 U.S. 532, 546 (1985).  Therefore, to establish a "due process" claim, a plaintiff is required to show that he: (a) did not receive written notice of his layoff; and (b) did not have an effective opportunity to rebut the stated reasons for his layoff.  *See cf., Russell v. Harrison*, 736 F.2d 283, 289 (5th Cir. 1984).  Where a plaintiff "due process" claim arises in the context of public employment, he must also prove that he has a property right in his employment, and that the decision to terminate him was arbitrary or capricious.  *See Moultori v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)(citing *Honore v. Douglas*, 833 F.2d 565, 568 (5th Cir. 1987).  However, a property claim in employment does not arise simply because the employee is a public employee.  A property interest is created when the public entity confers that status on an employee, thereby relinquishing its right to terminate that employee except for cause.  *See Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003); *see also Bishop v. Wood,* 426 U.S. 341, 344 (1976).

## V.    ANALYSIS AND DISCUSSION

### A.    *At Will Employees*

At the outset, the Court declares that the plaintiffs were "at will" employees of the City.  This status is apparent first in the fact that the City is a general-law city and may exercise only those powers specifically granted to it by the state legislature.  *See City of West Lake Hills v. Westwood Legal Defense Fund*, 598 S.W.2d 681, 683 (Tex. App.—Waco, 1980, no writ).  While a home rule municipality may exercise great authority in that it has full power of local self-government, the general-law municipality does not.  *See* Tex. Loc. Gov't Code § 51.072; *see also Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex. 1998).  Therefore, the City must have the statutory capacity to confer such status on its employees.  It does not have that capacity.

The plaintiffs' "at will" employment status is also confirmed by the fact that the City has not otherwise established, in its policies and procedures or ordinances, a property interest in employee positions within its police department. In fact, the City's Personnel Policies and Procedures provides that "The City of Kemah is an at will employer." Moreover, it specifically states that the "manual is not a contract." *See* [Chapter I, § 5, Personnel Policies and Procedures]. Therefore, the plaintiffs' "due process" claim must travel the path of an "at will" employee.

### B.   The Plaintiffs' Due Process Claim Fails

The record shows, and the evidence is undisputed, that the City required that a "qualitative analysis" be performed concerning each employee in a position being considered for layoff before a lay-off takes place. *See* [Chapter II § 6]. Other factors considered in this analysis include the length of service of each employee, critical needs to meet municipal requirements, job skills and disciplinary actions, if any, taken against an employee.

The evidence shows that the City commissioned the City Administrator/Police Chief ("CA/Chief") to conduct its qualitative analysis. After an analysis, the plaintiffs, among others, were presented with a letter stating that they were being laid-off and the basis for their lay-offs. The terminated employees were given an opportunity to respond during a meeting between the employees and the CA/Chief. Prior to the lay-offs, the matter of lay-offs, based on budgetary constraints, was presented to the City Council at its monthly meeting. Notice of the meeting and the agenda were posted. Therefore, the Court concludes that the plaintiffs' "due process" claim fails, as a matter of law, since no Constitutional deprivation is shown.

### C. First Amendment Claim Fails

The plaintiffs' First Amendment claim also fails as a matter of law. In review, the plaintiffs have shown that they suffered an adverse employment decision, *i.e.,* a lay-off. However, they must also establish that they engaged in speech that was a matter of public concern and that their interest in speaking their concerns outweighed the City's interest in avoiding it. *See Gillum v. City of Kerville*, 1992 WL 532733, *5 (W.D. Tex. 1992). Finally, the plaintiffs must establish a causal connection between the speech and the layoffs. *See Connick*, 461 U.S. at 146.

The plaintiff, McCollum, admits that he never engaged in speech that he identifies as casually connected to his layoff. He does contend, however, that his association with a certain private citizen was the basis of his layoff. Even here, however, something more than a bald allegation of a violation of his right to freedom of association is necessary in light of the fact that he was an at-will employee and, according to the City, underwent the same qualitative analysis that other employees underwent. The evidence is lacking that his layoff was in any way based on his association with a private citizen. And, the fact that the plaintiff associated with the private citizen as a function of his employment negates an association claim. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008)(internal citations omitted). The evidence shows that all police officers were members of the Association. Hence, it was necessary that all officers associate with each other and the public from time-to-time. Membership in the Association would not have made any officer a greater target than another since others who were members were not laid off.

The plaintiffs, Yates and Nolan, contend that they were retaliated against by the CA/Chief as evidenced by his letter to Sergeant Nolan in mid-June of 2008. In that letter, the

CA/Chief allegedly makes the following statements: "[I was] . . . disappointed and concerned that [I] was not given an opportunity to cast a ballot in the election." The CA/Chief further pointed out that officer Yates had attempted to have Association dues paid through payroll deduction. Apparently, it was the plaintiffs' view that the CA/Chief objected to this effort. The plaintiffs then argue that this communication "creates a genuine issue of material fact "if" this was the motivating factor for their terminations." [Emphasis supplied.]

The evidence presented by the plaintiffs fails to show that retaliation was the CA/Chief's motive. After all, nearly a year had passed between the letter and the plaintiffs' layoffs. Moreover, the plaintiffs' use of the term "if" suggests that they have no evidence to support the alleged basis for their layoffs. Finally, even if a connection were shown, the truth is the layoffs were based on budgetary constraints enacted by the City. The plaintiffs do not dispute that layoffs were necessary, simply that it should not have been themselves.

The plaintiffs also argue that the CA/Chief gave conflicting reasons for their layoffs after the layoffs occurred. The City stated that budgetary constraints were the basis for the layoffs. According to the plaintiffs, recent revelations show that the CA/Chief publicly stated concerns that certain improper conduct or foul language was a consideration in Yates' evaluation. She asserts that this concern was never documented, nor investigated as required by state law.

The commission given by the City to the CA/Chief was to conduct a "qualitative analysis" of each employee. Without doubt, that analysis would include considerations of conduct and factors that alone or even together may not support a termination. However, they may have been worthy of consideration when evaluating and comparing one employee to another in their conduct and job performance. In this circumstance, foul language may be the deciding factor, for example. In any event, the plaintiffs have failed to establish a *prima facie* case of a

First Amendment violation. Moreover, they have failed to rebut the City's legitimate basis for their layoffs. Therefore, the City's motion for summary judgment on their claims is meritorious.

VI.     **CONCLUSION**

The record shows that the City laid off employees, including the plaintiffs, in an effort to eliminate a budgetary deficit. The plaintiffs were laid off after a qualitative analysis was conducted by the City and a vote was taken by City Council. The plaintiffs have failed to rebut the City's stated basis for their layoffs. Therefore, the City's motion for summary judgment should be, and it is hereby Granted.

It is so Ordered.

SIGNED at Houston, Texas this 3rd day of August, 2012.

_____
Kenneth M. Hoyt
United States District Judge